ABRAHAM V. VAN FLEET, JOHN T. BIRD, HENRY C. PITNEY
AND ROBERT S. GREEN, VICE-CHANCELLORS.

---

### WILLIAM W. ANDERSON

*v.*

### FRANK P. HUFF et al.

1. The effect of a notice, under the third section of the Mechanics Lien law
(*Rev. p. 668*), is to work an assignment *pro tanto* of that which is due or to
become due from the owner to the contractor, from the time of the service of
the notice.

2. If the payment to be given to the contractor for the building is land,
such notice will fix a right in the workman or materialman who gives the
notice to be paid from such land, which equity will enforce.

3. The recovery of judgment against the contractor for the amount demanded will not destroy the right acquired by the notice.

On petition to set aside execution, open final decree &c.

*Mr. George W. Anderson,* for the complainant

*Messrs. Jackson & Coddington,* for Loomis & Rice, Seaman Williams, William R. Coddington, assignee, and J. P. Laire & Co.

*Mr. Joseph Cross* and *Mr. Joseph B. Coward,* for Sarah A. B. Green, Marsh & Ayres and Spicer & Hubbard.

THE CHANCELLOR.

On April 3d, 1890, Sarah A. B. Green entered into a contract with Frank P. Huff whereby Huff became bound to erect a house for her upon a lot of land in the city of Plainfield, on or before August 1st, 1890, in accordance with indicated plans and specifications, and she became bound to compensate him therefor by paying him $500 when a certain stage of completion should be reached, $800 when more work should be done, $1,000 when the work had still further progressed, and then convey him one lot of land when another stage in the building was reached, and finally convey him a second lot of land when the building should be finished. The cash payments were duly made and the first lot of land was conveyed before the difficulties in this case arose.

On the 24th of June, 1890, Spicer & Hubbard, materialmen, served a notice upon Mrs. Green, under the third section of the Mechanics Lien law (*Rev. p. 668*), that Huff was indebted to them in the sum of $163.38 for material furnished in the erection of the building, which, upon demand, he had refused to pay. On the 1st of July, in the same year, a similar notice was served by B. P. Bahr, of whom William R. Coddington is assignee, for $45. On the 3d of July a similar notice was served by J. P. Laire & Co. for $68.59. On the 11th of July a similar notice was served by the complainant for $108.51. On the 14th of

July a similar notice was served by Spicer & Hubbard for $65.60. On July 26th a similar notice was served by Marsh & Ayres for $175.32. On August 4th a similar notice was served by Spicer & Hubbard for $45.15. On the 5th of August a similar notice was served by Seaman Williams for $250, and on the 5th of August, later in the day, a similar notice was served by Loomis & Rice for $405.92.

At the time these notices were served no amount was actually due from Mrs. Green to Huff, the building not being completed. Later, Mrs. Green, in virtue of the provisions of the contract with Huff, gave him notice to complete his work within three days, or that she would complete it in his stead and retain the cost of so doing from the amount yet payable to him according to the terms of the contract. Huff did not complete the work, and at the time the bill in this case was filed Mrs. Green was engaged in completing it for him.

On the 23d of September, 1890, the complainant recovered judgment against Huff for $112.56 for the $108.51 demanded of Mrs. Green, with interest and costs. On the 6th of October, 1890, Loomis & Rice recovered judgment against Huff for $405.92, the amount of their claim demanded from Mrs. Green. On the 13th of October, 1890, Seaman Williams recovered judgment against Huff for $254, which was the $250 demanded from Mrs. Green, with costs. On the 28th of November, 1890, William R. Coddington, assignee, recovered judgment against Huff for $47.64, which was the $45 demanded from Mrs. Green and costs. Later, on the same day, J. P. Laire & Co. recovered judgment against Huff for $71.94, which was the $68.59 demanded from Mrs. Green, with costs. On the 8th of December, 1890, Marsh & Ayres recovered judgment against Huff for $177.97, which was the $175.32 demanded from Mrs. Green and costs, and later, on the same day, Spicer & Hubbard recovered judgment against Huff for $278.13, which comprises the three amounts previously by them demanded from Mrs. Green and costs.

On the 24th of September, 1890, the complainant filed his bill against Mrs. Green and Huff, in which he sought to have

his judgment charged upon the lot of land which was yet to be conveyed to Huff, and made thereout by a sale of the land under decree of this court.    Later, he filed a supplemental bill making Loomis & Rice, Seaman Williams, William R. Coddington, assignee, and J. P. Laire & Co. defendants, because of the judgments they had recovered against Huff; and later yet, he amended the supplemental bill by making Marsh & Ayres and Spicer & Hubbard parties defendants, because of their judgments against Huff.

After the supplemental bill was amended Mrs. Green answered, setting up that the contract was not finished and the building completed; that she was completing it in virtue of the authority given her by the contract, and had already expended considerable sums of money in the performance of her undertaking and would be obliged to make still further expenditures in the same direction.    She also alleged the fact to be that notices under the third section of the Mechanics Lien law, without identifying them as the notices of the defendants, had been served upon her.

The other defendants did not answer.

Subsequently, on the 24th of February, 1891, in presence and at the instance of the solicitor of the complainant and the solicitors of the defendants, a decree *pro confesso* was signed, in and by which the bill was taken as confessed against all the defendants except Mrs. Green, and it was referred to a master—

" to ascertain and report the amount due the complainant on his said judgment mentioned in said bill of complaint, and the amount due the defendant. Sarah A. B. Green on her claims set up in her answer filed in this cause, and the several amounts due the defendants [the several judgment creditors] upon their respective judgments, and whether the said judgments were obtained for material and labor furnished or performed in and about the erection of the building mentioned in the said bill of complaint, and also to ascertain and report the order and priority of payment of the said judgments and claim."

When the inquiry contemplated by the order of reference was had before the master, the solicitors of all the parties appeared and agreed upon the master's minutes that notices under the third section of the Mechanics Lien law had been served upon Mrs. Green at the times and for the amounts already stated; that

judgments were recovered for the sums demanded in those notices at the times and in the amounts already stated, and that all claims so demanded were for work done and materials furnished to Huff in and about the erection of Mrs. Green's house, and it was then proved before the master that Mrs. Green had already expended $250.18 in the completion of the house, and that she would be obliged to expend the further sum of $55.60 to finish the work.

The master reported that Mrs. Green's claim amounted to $308.78, and that the judgments should be paid in the order of their respective dates.

To this report Marsh & Ayres and Spicer & Hubbard filed exceptions, upon the ground that the master had failed to report the dates of the service of the notices upon Mrs. Green and the order of priority of such notices.

When those exceptions came to be heard they were overruled, obviously, because the order of reference to the master and the condition of the pleadings did not call for or authorize such a report as the exceptants desired. The complainant expressly made Marsh & Ayres and Spicer & Hubbard parties to the suit because of their judgments, and not because of the service of their notices. The bill is silent upon the subject of notices, and Marsh & Ayres and Spicer & Hubbard did not answer, setting up priority because of notices to Mrs. Green. They were apparently contented to stand as the bill put them, upon their judgments.

When the exceptions were overruled, Marsh & Ayres and Spicer & Hubbard should have asked leave to answer, and, by way of cross-bill, claim priority according to the time of service of the notices upon Mrs. Green. That course would have necessitated a motion to set aside the master's report and order of reference.

After the exceptions were overruled the complainant took a final decree in accordance with the master's report without notice to the defendants.

None of the defendants have put themselves in position by answer to entitle them to notice of application for the final

23

decree save Mrs. Green, and she does ·not now object to the decree. But it is evident from the admissions of counsel before the master that it was the intention of the defendants, other than Mrs. Green, to rely in some way upon the notices that they had given Mrs. Green. The petition now presented alleges that the chancellor stated, at the hearing upon the exceptions, that the rights secured by the notices, notwithstanding the overruling of the exceptions, might be urged upon the final hearing. This statement does not appear by the order overruling the exceptions, but, as it is not denied, it stands as a fact for present consideration. And it exhibits that the complainant knew, when he took his final decree, that the petitioners desired to avail themselves of whatever right their notices to Mrs. Green gave them. The final decree, after that, was taken with such expedition that no time was afforded the petitioners to ask permission to properly assert their rights. I perceive no sufficient reason why I may not now, upon equitable terms, allow the petitioners the opportunity they seek, if they have substantial rights to protect. Those terms appear to be that they pay the costs of the execution, enrollment, final decree and master's report, and answer, by way of cross-bill, within a short time to be designated.

Upon the question whether the petitioners have substantial rights, all parties have been· heard. It is now settled by adjudications that the effect of a notice under the third section of the Mechanics Lien law is to work an assignment *pro tanto* of that which is due, or to become due, from the owner to the contractor from the time of the service of the notice. *Wrightman* v. *Bremer, 11 C. E. Gr. 489, 492; Frank* v. *The Freeholders of Hudson County, 10 Vr. 347; Mayer* v. *Mutchler, 21 Vr. 162; Budd* v. *Trustees &c., 22 Vr. 36.*

There can be no doubt that if the last payment upon the contract to Huff was to have been in money, that the petitioners' notices would have operated as an assignment *pro tanto* of that money. The payment, however, was to have been in land, and the question, therefore, is presented whether the expression of the statute "amount owing," referring to that from which the

amount demanded from the owner is to be retained, is intended to comprehend other consideration than money to be paid for the building. I think that it would be entirely too narrow a construction of the statute to refer the word "amount" to money only. The object of the statute, as expressed in its title, is to secure workmen and materialmen payment. As a means to that end a lien may be had upon the building and the land whereon it stands, unless there be a duly filed written contract. If the owner takes the precaution to have such a contract, his house and land are saved from liens, but the consideration he is to give the contractor becomes liable instead thereof to the workmen and materialmen if they duly notify him of the contractor's unpaid indebtedness to them. The statute provides that he shall retain the amount demanded "out of the amount owing by him" to the contractor, and, upon being satisfied of the correctness of the demand, pay it. The word "amount" is plainly used in the sense of substance, the legislative intent being that the value which the contractor is to have is to be reached. The word is quite as applicable to land, chattels or other valuable things given in payment as to money.

Each notice, when duly served upon Mrs. Green, fixed a right of payment from the value of the unconveyed lot to the extent of the sum justly demanded, to which right this court will give effect.

The order of priority among the several notices, as in the case where money is owing to the contractor, is determined by the respective dates of their service; that which is first in time being first in right.

The fact that, subsequently, the persons who gave the notices to Mrs. Green sued the contractor and recovered judgments for the amounts which they respectively sought to obtain by notice, does not destroy the rights acquired by the notices. The judgments serve to establish the amounts as justly due from the contractor. The cost of such establishment (that is, the costs of suit and interest upon the demands, which is given as damages for their detention) is not a lien upon the fund in virtue of the notices.

I think, then, that the petitioners have a substantial right, of which they should be allowed to avail themselves, upon the terms I have already indicated. I will accordingly so order.